IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ian Thomas Branham,<br><br>　　　　Petitioner,<br><br>vs.<br><br>John Gay, et. al.,<br><br>　　　　Respondents. | No. CV-10-501-PHX-ROS (LOA)<br><br>**ORDER** |

Pending before the Court is Magistrate Judge Anderson's Report and Recommendation ("R&R"). (Doc. 17). The R&R recommends the Petition for Writ of Habeas Corpus (the "Petition") (Doc. 1) be dismissed with prejudice. Petitioner filed objections to the R&R. (Doc. 18). For the reasons below, the Court will adopt the R&R.

## BACKGROUND

**A.　Verdict, Sentence and Appeal**

On June 23, 2003, the State of Arizona filed an indictment against Petitioner with five counts of sexual assault and one count of kidnapping. Before trial, the State dismissed one count of sexual assault, leaving four counts of sexual assault and one count of kidnapping against Petitioner.[1] The case proceeded to a jury trial, and the jury convicted Petitioner of

---

[1] At a pretrial conference, the trial court renumbered the counts. Counts I and IV alleged Petitioner had vaginal sexual intercourse with the victim without her consent. Counts II and III charged Petitioner as an accomplice to non-consensual vaginal sexual assault

these five counts, as charged. The jury subsequently found three aggravating factors: (1) the offense involved accomplices; (2) the offense was especially heinous, cruel, and depraved; and (3) Petitioner caused physical and emotional harm to the victim. Petitioner admitted a historical prior felony conviction for armed robbery. The trial court found no mitigating circumstances. The trial court imposed four consecutive, aggravated, 21-year prison terms for Petitioner's four sexual-assault convictions (Counts I, II, III and IV), and an 18.5-year prison terms for Petitioner's kidnapping conviction (Count V) to run concurrently with the sentence for Count I.

**B.   Direct Review**

On July 6, 2005, Petitioner filed a timely notice of direct appeal. (Doc. 12, Ex. Y). On March 8, 2007, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Doc. 12, Ex. Z). The Arizona Court of Appeals held Petitioner's arguments had no merit, and additionally ruled Petitioner waived his federal constitutional arguments relating to two different claims: (1) the preclusion of allegedly exculpatory evidence regarding Damien King; and (2) the trial court's allegedly vague jury instruction defining the aggravating circumstances of "especially cruel, heinous, or depraved." (Id. at 8, 21, ¶¶ 29, 62-63.)

On April 20, 2007, Petitioner filed a *pro per* petition for review with the Arizona Supreme Court, which summarily denied review on August 8, 2007. (Doc. 12, Exs. AA and BB). Petitioner did not petition the United States Supreme Court for a writ of certiorari within the 90-day filing deadline. As such, Petitioner's conviction became final on direct review on November 6, 2006. *See Jihad v. Hvass*, 267 F.3d 803, 804-05 (8th Cir. 2001).

**C.   State Collateral Review**

On June 26, 2007, Petitioner filed a notice of post-conviction relief in the trial court under Arizona Rule of Criminal Procedure Rule 32. (Doc. 12, Ex. CC). On July 10, 2007,

---

against the victim committed by two other individuals, Guy Wooten ("Wooten") and Keoni Watson ("Watson"), respectively.

the court assigned Petitioner counsel, Kerri Droban ("Droban"), for the Rule 32 proceedings. (Id., Ex. DD). On December 10, 2007, through counsel, Petitioner filed a petition for post-conviction relief (Doc. 12, Ex. EE)

On March 17, 2008, the State filed its response in opposition to Petitioner's request for post-conviction relief. (Doc. 12, at Ex. FF). On May 12, 2008, the trial court denied relief and dismissed the petition, finding "no material issue of fact or law exists which would be served by any further proceedings."

On May 28, 2008, Petitioner petitioned the Arizona Court of Appeals to review the trial court's denial of post-conviction relief. (Doc. 1). The Arizona Court of Appeals summarily denied review on August 14, 2009. (Doc. 12, Ex. HH).

On November 30, 2009, Petitioner submitted a *pro se* petition for review to the Arizona Supreme Court, which was rejected for non-compliance with several procedural rules. (Doc. 12, Exs. II and JJ). Petitioner never corrected the defects and did not petition the Arizona Supreme Court for review of the trial court's denial of post-conviction relief.

**D.  Federal Habeas Petition**

On February 23, 2010, Petitioner filed the pending § 2254 Petition. Petitioner raises the following grounds for relief:[2]

> **Ground I**: Petitioner contends that he suffered violations of the Fifth Amendment "right to be free from double punishment" when the trial court abused its discretion in the following ways:
>
> (A) The trial court disregarded the recommendations of defense counsel and the pre-sentence report writer that Petitioner receive concurrent prison terms for his convictions for Counts I, II, III, and V, allegedly because "they all occurred during one continuous episode," and because the sexual assaults underlying Counts II and III were the "ultimate crime" for his kidnapping conviction in Count V. (Doc.1, at 5.) [hereinafter referred to as "Ground (I)(A)"]
>
> (B) "The trial court ran counts I and IV consecutive to

---

[2] Although Petitioner did not subdivide his grounds for relief, the Magistrate Judge used the Respondents' manner of identifying Petitioner's claims, and the Court will use those identifications.

- 3 -

each other without any discussion as to whether he legally had discretion to do otherwise." (Id.) [hereinafter referred to as "Ground (I)(B)"].

(C) "The court did have the discretion to impose concurrent terms for Counts II and III, which were imposed due to other people's conduct." (Id.) [hereinafter referred to as "Ground (I)(C)"]

**Ground II**: Petitioner suffered alleged violations of his right to a fair trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, when the trial court made the following rulings:

(A) The court refused to permit Petitioner "to call Andre Hamilton into court to be viewed by the jury." (Doc. 1, at 6.) [hereinafter referred to as "Ground (II)(A)"].

(B) The court "refused to declare a mistrial or impose other appropriate sanctions against the State (prosecutors) for their (mis)conduct which resulted in the loss of Hamilton's exculpatory testimony at trial." (Id.) [hereinafter referred to as"Ground (II)(B)"].

(C and D) The court refused to permit Petitioner "to present probative evidence and argument relevant to [his] misidentification defense regarding an uncharged assailant named Damian King. (Id.) In state court, this claim had two dimensions: (1) a challenge to the trial court's ruling that Petitioner could not call King to the stand for the express purpose of forcing King to invoke his Fifth Amendment privilege in the jury's presence; and (2) a challenge to the trial court's ruling granting the State's motion-in-limine to preclude Petitioner from eliciting testimony that King had not been charged with any crime in connection with the kidnapping and sexual assaults of [the victim]." [hereinafter referred to as "Ground (II)(C)" and "Ground (II)(D)"].

(E) The court "erroneously refused to instruct the jury on [sexual assault's] lesser-included offense of sexual abuse" on Count II because "it was inconclusive whether Wooten or [Petitioner] ever penetrated the victim." (Id.) [hereinafter referred to as"Ground (II)(E)"].

**Ground III**: Trial counsel rendered ineffective assistance by failing to object to the admission of evidence of the abusive acts that Billy Watson and Rita Anthony committed against the victim on June 9, 2003, outside Petitioner's presence, which he contends prejudiced the jury and led to his convictions and the finding of the aggravating circumstance of especially cruel, heinous, or depraved. (Doc. 1, at 7).

**Ground IV**: The trial court violated Petitioner's right to a jury trial, due process, and a fair trial, as guaranteed by the Eighth and Fourteenth Amendments, by giving the following

instructions to the jury:

> (A) A reasonable-doubt instruction that contained "firmly convinced" language that allegedly lowered the State's burden of proof impermissibly to "clear and convincing evidence." (Doc. 1, at 8.) [hereinafter referred to as "Ground (IV)(A)"].
>
> (B) A definitional instruction of the "especially cruel, heinous, or depraved" aggravating circumstance, which Petitioner claims to have been "unconstitutionally vague." (Id.) [hereinafter referred to as "Ground (IV)(B)"].

(Doc. 1); (Doc. 12, at 31-33). Respondents to filed an answer and Petitioner filed a reply.

## ANALYSIS

### A.  Standard of Review

A district court "must make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). A court need review only those portions objected to by a party, meaning a court can adopt without further review all unobjected to portions. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

The Court's review of the Petition is constrained by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The § 2254(d) standard is "difficult to meet." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunction in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307 n. 5 (1979)).

Federal habeas corpus relief is only available where the earlier state court's decision "was contrary to" federal law clearly established by the Supreme Court, or "involved an unreasonable application of" such law, or "was based on an unreasonable determination of

1 the facts in light of the state court record." 28 U.S.C. § 2254(d)(1)-(2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Richter*, 131 S.Ct. at 785. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S.Ct. at 786. To make such determinations, federal courts look to the holdings of the Supreme Court at the time of the state court's decision. *Id.*

The petitioner bears the burden of showing the state court's factual determinations are incorrect by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the habeas court determines a state court decision is "contrary to" or an "unreasonable application of" clearly established federal law, the habeas court must determine whether it resulted in constitutional error by assessing the prejudicial impact and whether they "had substantial and injurious effect or influence in determining the jury's verdict." *Benn v. Lambert*, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002); *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation omitted).

**B.      Grounds II(C), II(D) and IV(A) - No Objections to R&R**

Petitioner does not object to the R&R as it relates to Grounds II(C), II(D), and IV(A). Therefore, the Court adopts the R&R as it relates to Grounds II(C), II(D), and IV(A). *Reyna-Tapia*, 328 F.3d at 1121.

**C.      Ground IV(B)**

In Ground IV(B), Petitioner argues the trial court violated his rights to due process and a fair trial by giving a jury instruction which defined the "especially cruel, heinous or depraved" aggravating factor in an unconstitutionally vague manner. (Doc. 1, at 8). Petitioner raised this claim on direct appeal, and the Arizona Court of Appeals rejected the claim because it was "invited error." (Doc. 12, at Ex. Z, at 21). Both Petitioner and the prosecutor submitted proposed jury instructions defining cruel, heinous and depraved, and the trial court used Petitioner's proposed instruction. "[W]hen a party requests an erroneous instruction, any resulting error is invited and the party waives his right to challenge the instruction on appeal." *State v. Logan*, 200 Ariz. 564, 565, 30 P.3d 631, 632 (Ariz. 2001).

1 The invited error doctrine is an adequate and independent state procedural rule upon which the Arizona Court of Appeals relied to reject Petitioner's challenge. Therefore, Petitioner is not entitled to habeas corpus relief on Ground IV(B).[3]

**D.     Grounds I(A), I(B) and I(C)**

In Ground II, Petitioner argues the trial court violated his "right to be free from double punishment under the United States Constitution's Fifth Amendment." (Doc. 1). Petitioner argues his sentences for sexual assault should have ran concurrently because "they all occurred during one continuous episode" and because the sexual assaults in Counts II and III were the "ultimate crime" for his kidnapping conviction in Count V. (Doc. 1, at 5). Thus, Petitioner's challenge is to the trial court's imposition of concurrent and consecutive sentences. The "decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507, (9th Cir. 1994); *see also Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

To the extend Petitioner alleges a double jeopardy claim under the United States Constitution, it fails. The double jeopardy clause protects against a second prosecution for the same offense after acquittal or conviction, and multiple punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). Where "cumulative sentences [are] imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459

---

[3] In addition, Petitioner cannot show "cause and prejudice" or a "fundamental miscarriage of justice." To establish "cause," a petitioner must show an objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Smith v. Murray*, 477 U.S. 527, 488-92 (1986). To establish fundamental miscarriage of justice, Petitioner must present newly discovered evidence showing "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Further, the Eighth Amendment vagueness inquiry does not apply to Petitioner because he was not tried for a capital offense. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991).

U.S. 359, 366 (1983). The Arizona Court of Appeals rejected Petitioner's challenge to the imposition of consecutive sentences on Counts II and III, ruling the sentence was within the Arizona legislature's intent. (Doc. 12, Ex. Z).[4] On habeas review, "[w]e must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments, although we are not bound by that court's ultimate conclusion concerning whether such punishments violate the Double Jeopardy Clause." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1985). Petitioner's double jeopardy claim fails.

**E. Grounds II(A) and II(B)**

    **1. Ground II(A)**

Petitioner objects to the R&R as it relates to Ground II(A) because Petitioner was not permitted to call Andre Hamilton ("Hamilton"), a co-defendant, to be viewed by the jury.

Hamilton pled guilty to two charges, kidnapping and sexual assault, in exchange for reduced sentences and a plea agreement that required him to testify at Petitioner's trial. (Doc. 12, Exs. A and F). In an interview with Petitioner's defense counsel, Hamilton gave several statements that contradicted his earlier statements to prosecutors. (Id., Exs. A, F, J. L, M and N). On April 25, 2005, prosecutors informed Petitioner they no longer intended to call Hamilton and would be moving to withdraw Hamilton's plea agreement due to credibility concerns and statements made during trial preparation. (Id., Exs J and M). On April 25, 2005, Petitioner filed a motion for any exculpatory evidence Hamilton had disclosed during the pre-trial interview. (Id., Exs. A and L). Petitioner stated Hamilton's claim of consensual sex with the victim was "not new news" because Hamilton had made this

---

[4] The record supports the Arizona Court of Appeals' finding that Petitioner engaged in separate acts. That finding supports the Arizona Court of Appeals' conclusion that "the trial court did not err in imposing consecutive sentences under A.R.S. § 13-116." Doc. 12, Ex. Z); *see also State v. Williams*, 182 Ariz. 548, 562 898 P.2d 497, 511 (Ariz. Ct. App. 1995) (upholding consecutive sentences for multiple sexual assaults in rapid succession during same episode), *superseded by rule on other grounds as stated in State v. Terrazas*, 187 Ariz. 387, 930 P.2d 464 (Ariz. Ct. App. 1996); *State v. Scott*, 177 Ariz. 131, 140, 856 P.2d 792, 801 (Ariz. 1993) (accomplice liability).

- 8 -

1 claim during a defense interview. (Id., Ex L).

2 The Court held a hearing the next day to consider Hamilton's testimony. On April 26, 2005, Petitioner's defense counsel argued the State untimely disclosed Hamilton's statements. However, prosecutors had offered to recite Hamilton's statements to defense counsel in open court six days earlier. (Id., Exs. J and M). The State reported Petitioner could call Hamilton as a defense witness, but the court suspended the trial and ordered a formal motion to withdraw Hamilton's plea agreement. (Id.). The next day, however, prosecutors informed the trial court and defense counsel by e-mail the State would not be withdrawing Hamilton's plea agreement, the Petitioner could call Hamilton as a defense witness, Hamilton's defense counsel was willing to disclose Hamilton's statements to the deputy county attorney, and Petitioner could re-interview Hamilton. (Doc. 12, Ex. A, Item 168). The State also formally responded to Petitioner's discovery request by confirming Hamilton's statements to the deputy county attorney were identical to those made during his defense interview conducted by Petitioner's counsel on March 10, 2005, noting one exception that was not exculpatory. (Id., Item 128).

Defense counsel argued the State was holding Hamilton's plea agreement over his head, and described Hamilton as a "damaged" witness who had been so "manipulated . . . by the State and their threats" that the State "ended up destroying exculpatory evidence for [Petitioner]." (Id., Ex N, at 7-8). The State argued: Petitioner could call Hamilton himself; both sides could impeach Hamilton; some of Hamilton's prior statements incriminated Petitioner; the State "never said one word to Mr. Hamilton about his ability to plead" the Fifth Amendment privilege; Hamilton's plea agreement required him to testify truthfully regardless of who called him; and the State could not revoke the plea agreement if Hamilton ultimately testified for Petitioner. (Id., Ex. N, at 13-22). The trial court denied Petitioner's request for sanctions because: the State immediately disclosed to defense counsel exculpatory statements made by Hamilton to the deputy county attorney and offered to relate those statements in open court the following day; the State fully complied with Petitioner's motion for exculpatory evidence; and Petitioner could interview Hamilton's defense counsel and the

deputy county attorney. (Id., Ex. N., at 22-24).

Two days after Petitioner's trial resumed, the trial court asked the deputy legal defender counsel whether the needed a court order to secure Hamilton's presence. (Doc. 12, Ex. P, at 170). The deputy legal defender responded he was "having problems" with Hamilton and did not request his appearance the next day. (Id., Ex. P, at 171). He also informed the parties and Hamilton's counsel he did not intent to elicit testimony from Hamilton, but instead intended to call Hamilton into the court room and ask a detective to make an in-court identification before the jury. (Doc. 12, Ex. R, at 7-8). The State objected because Hamilton's appearance was not an issue. (Id.). Petitioner never called Hamilton to the stand to determine whether he would invoke the Fifth Amendment. (Id., Ex. R).

Petitioner argues the trial court should have granted a mistrial or sanctioned the State because the State denied Petitioner his Sixth and Fourteenth Amendment right to compulsory process and to present exculpatory evidence. Petitioner also challenges the trial court's decision to deny his request to have the jury view Hamilton. (Doc. 12, Ex. Y).

The Arizona Court of Appeals found no prosecutorial misconduct. (Doc. 12, Ex. Z). The Arizona Court of Appeals relied on the fact that: "the prosecutor had the right to enter the plea agreement"; the prosecutor agreed to all of Petitioner's requests for disclosure; and defense could have called Hamilton to testify, but did not so due to credibility issues; and nothing in the record indicates considering withdrawing the plea agreement "damaged" the credibility of the witness "who was already inconsistent in his statements, uncooperative and reluctant." (Id.).

The trial court denied Petitioner's request to call Hamilton for in-court identification but not for testimony. There were already photographs in evidence, and the trial court ruled an in-court presentation would be irrelevant and cumulative. (Doc. 12, Ex. R). The Arizona Court of Appeals summarily denied relief. Petitioner is not entitled to federal habeas relief on Ground II(A) because it challenges the trial court's ruling that an in-court identification was irrelevant and cumulative under Arizona evidentiary rules. See 28 U.S.C. § 2254(a);

*Estelle*, 502 U.S. at 67-68.[5]

As such, Petitioner is not entitled to habeas relief on Ground II(A).

### 2. Ground II(B)

Petitioner objects to the R&R as it relates to Ground II(B) because the trial court improperly "refused to declare a mistrial or impose other appropriate sanctions against the State (prosecutors) for their (mis)conduct which resulted in the loss of Hamilton's exculpatory testimony at trial." (Doc. 1, at 6). The Arizona Court of Appeals denied relief on Ground II(B).

On habeas review, the standard of review for prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Daredn v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). The due process analysis in cases of alleged prosecutorial misconduct focuses on the "fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The issue is "whether the prosecutors' [alleged misconduct] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). Petitioner must establish (1) the prosecutor's "actions amounted to 'misconduct,'" and (2) "such misconduct resulted in actual prejudice to petitioner, such that his trial was rendered 'fundamentally unfair.'" *Woods v. Adams*, 631 F.Supp.2d 1261, 1279 (C.D. Cal. 2009) (citing *Donnelly*, 416 U.S. at 637-38).

The Sixth Amendment Compulsory Process Clause guarantees a criminal defendant the "right to offer the testimony of witnesses, to compel their testimony, if necessary," as part of the broader "right to present a defense," which is "a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). This right, however, is not absolute and must accommodate other legitimate interests in a criminal trial. *E.g., Michigan v. Lucas*,

---

[5] Moreover, Hamilton was positively identified by photographs. Petitioner never argued the State's witnesses inaccurately attributed Hamilton's criminal conduct to Petitioner. Petitioner has not shown the state court's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law.

- 11 -

500 U.S. 145, 152-53 (1991). The Sixth Amendment right to compulsory process requires the same "showing of materiality" as the Fifth Amendment Due Process Clause. *United States v. Bianchi*, 594 F. Supp. 2d 532, 544-45 (E.D. Pa. 2009). "Materiality" is "a reasonable probability that . . . the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Thus, "more than the mere absence of testimony is necessary to establish a violation of the right [to compulsory process]." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). The petitioner "must at least make some plausible showing of how [the unavailable] testimony would have been both material and favorable to his defense. *Id.*

The Arizona Court of Appeals found no prosecutorial misconduct, and defense counsel made a tactical decision based on inconsistent statements and credibility. (Doc. 12, Ex. Z, at 14). The standard governing this issue is a "general rule," and the state court is afforded substantial deference. *Renico v. Lett*, 130 S.Ct. 1855, 1864 (2010). The Arizona Court of Appeals' conclusion was reasonable. "The general rule is that an accomplice who has pled guilty may testify against non-pleading defendants without raising due process concerns.'" *Morris v. Woodford*, 273 F.3d 826, 836 (9th Cir. 2001) (quotation omitted). Where a witness breaches the truthfulness provision of the plea agreement, the prosecution may move to withdraw the plea agreement, reinstate charges, and bring a witness to trial. *Hentz v. Hargett*, 71 F.3d 1169, 1175-76 (5th Cir. 1996). Because the court had not yet accepted the plea agreement, the prosecution did not need the court's authorization to withdraw the plea agreement. (Doc. 12, Ex. L); *State v. Superior Court*, 160 Ariz. 71, 71-72, 770 P.2d 375, 375-76 (Ariz. Ct. App. 1988) (citing Ariz. R. Crim. P. 17.4(b)).

Nevertheless, the State did not withdraw from the plea agreement, and permitted Petitioner the opportunity to interview and call Hamilton as a witness without concern he would tailor his testimony to keep his favorable plea agreement. The State disclosed Hamilton's statements to the deputy county attorney. (Doc. 12, Ex. A, Item 128; Ex. N, at 4-24).; *United States v. Terzado-Madruga*, 897 F.2d 1099, 1108-09 (11th Cir. 1990). There

1 was no prosecutorial misconduct.

2 Moreover, the State did not interfere with Petitioner's right to compulsory process.
3 Hamilton never invoked his Fifth Amendment privilege against self-incrimination. (Doc. 12,
4 Ex. Z, at 14; Ex P at 170; Ex. R at 11, 15; Ex. N, at 4-8, 23-27). Hamilton did not testify on
5 Petitioner's behalf because defense counsel made a tactical decision not to call him as a
6 witness due to Hamilton's lack of cooperation and credibility.

7 As such, Petitioner is not entitled to habeas relief on Ground II(B).

**F.     Ground II(E)**

In Ground II(E), Petitioner argues the trial court "erroneously refused to instruct the jury on [sexual assault's] lesser-included offense of sexual abuse" on Count II because "it was inconclusive whether Wooten or [Petitioner] ever penetrated the victim." (Doc. 1, at 6) Petitioner raised this argument on direct appeal, and the Arizona Court of Appeals rejected it.

As discussed above, habeas relief is not available unless the state court decision was contrary to, or an unreasonable application of, clearly established federal law. "Where the Supreme Court has not addressed an issue in its holding, a state court adjudication of the issue not addressed by the Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law." *Stenson v. Lambert*, 504 F.3d 873, 881 (9th Cir. 2007); *see also Wright v. Van Patten*, 552 U.S. 120, 124-26 (2008). Here, "the Supreme Court has never held that there is a constitutional requirement that lesser-included offense instructions be given in non-capital cases." *Carney v. Fabian*, 487 F.3d 1094, 1097 (8th Cir. 2007); *Beck v. Alabama*, 447 U.S. 625, 637 (1980) ("We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a non-capital case."). Because there is no clearly established Supreme Court authority requiring a lesser-included offense instruction in non-capital cases, the Arizona Court for Appeals' denial of Ground II(E) was not contrary to, or an unreasonable application of, clearly established Supreme Court law. Moreover, federal courts have held "the failure of a state trial court to instruct on a lesser-included offense in a non-capital case does not present a federal constitutional

question." *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998). Federal habeas relief is unavailable for this type of claim. *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976). Petitioner's argument under Ground II(E) fails.

**G.     Ground III**

In Ground III, Petitioner argues he was provided ineffective assistance of counsel because counsel did not move to preclude the State from offering evidence of Billy's and Rita's conduct toward the victim,[6] which occurred outside of Petitioner's presence and without his knowledge. (Doc. 1, at 7). Petitioner raised this claim on post-conviction review. (Doc. 12, Ex. EE). Petitioner has not shown the trial court's ruling was contrary to, or an unreasonable application of clearly established federal law.

To state a claim for ineffective assistance of counsel, Petitioner must show (1) counsel's performance was deficient; and (2) counsel's deficient performances prejudiced petitioner. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). There is a "strong presumption" representation is within the "wide range" of reasonable conduct, and courts will not rely on "the distorting effects of hindsight." *Id.* at 689. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms', not whether it deviated from best practices or most common custom." *Richter*, 131 S.Ct. at 788 (quoting *Strickland*, 466 U.S. at 690).

Petitioner must also establish the deficient representation resulted in prejudice. *Strickland*, 466 U.S. at 691-92. Petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* The "potential prejudicial effect of counsel's deficient performance must be evaluated in light of" the strength of the prosecution's case. *Johnson v. Baldwin*, 114 F.3d 835, 838 (9th Cir. 1997). This review is highly deferential. *Richter*, 131 S.Ct. at 788.

Petitioner's counsel failed to move to exclude evidence of Billy and Rita's conduct

---

[6] William (a.k.a. Billy) Watson and Rita Anthony. (Doc. 12, Ex. A, Item 2).

- 14 -

during the first night when Petitioner was not present. The State argued the evidence of injuries inflicted on the victim by Billy and Rita were admissible to prove: the victim was being held against her will; the victim did not consent or have the capacity to consent to intercourse with Petitioner and accomplices; and the visible injuries show Petitioner had knowledge that the victim did not consent to intercourse and was being held against her will. (Doc. 12, Ex. D, at 44-47; Ex. GG, at 4-5).

"The conduct of William Watson and Rita Anthony was intrinsic to the crimes committed by [Petitioner.]" (Doc. 17, Exs. GG and HH). *State v. Dickens*, 187 Ariz. 1, 18 n. 7, 926 P.2d 468, 485 (Ariz. 1996) ("Other act evidence is 'intrinsic' when evidence of the other act and evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode,' or the other acts were 'necessary preliminaries' to the crime charged.") (quoting *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996)); *State v. Baldenegro*, 188 Ariz. 10, 15-16, 932 P.2d 275, 280-81 (Ariz. Ct. App. 1996) (holding evidence of crimes committed by other gang members admissible against defendant as "intrinsic" evidence, which was "inextricably intertwined" with the charged offense). Petitioner's claim for ineffective assistance fails because the trial court determined the evidence would have been properly admitted even if Petitioner's counsel objected. *Stanley v. Schriro*, 598 F.3d 612, 619-20 (9th Cir. 2010) (defense counsel was not ineffective for failing to present inadmissible expert testimony); *Hebner v. McGrath*, 543 F.3d 1133, 1137 (9th Cir. 2008) (ineffective assistance claim failed where state appellate court ruled evidence admissible). Defense counsel's failure to object to the admission of admissible testimony was not constitutionally deficient representation. *Id.*[7]

Even if Petitioner did establish deficient performance, he has not established

---

[7] Further, defense counsel unsuccessfully objected to Rita's testimony describing Billy's conduct prior to Petitioner arriving at the house; moved to preclude photographs depicting the victim's injuries; moved to preclude the use of the term "gang bang" and "gang rape"; and argued other persons, including Billy and Rita, caused the victim's injuries. (Doc. 17, Ex. F, at 108; Ex. D, at 44-48; Ex. S, at 63-64; Ex. U, at 57-58).

prejudice. There was sufficient evidence of Petitioner sexually assaulting and beating the victim to support the jury's verdict[8] such that Petitioner cannot establish a reasonable probability the outcome of Petitioner's trial would have been different but for counsel's deficient performance. *Strickland*, 466 U.S. at 687-94. *See* Doc. 17, at 58-60 (summarizing evidence). Further, Petitioner was not prejudiced in the sentencing phase. At sentencing, the trial court found two additional aggravating factors (the presence of accomplices and the emotional and physical pain to the victim) and found no mitigating factors. (Doc. 12, Ex. W, at 50). The trial court stated it would have imposed the same sentence even without the "especially cruel, heinous, or depraved" aggravating factor. (Doc. 12, at GG, at 2). "There was more than sufficient aggravating factors present to warrant an aggravated prison term irrespective of the cruel, heinous and depraved factor." (Id.). Petitioner's argument under Ground III fails.

Accordingly,

**IT IS ORDERED** the Report and Recommendation **(Doc. 17)** is **ADOPTED IN FULL**. The petition (**Doc. 1**) is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS ORDERED** a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal is denied because the denial of the motion is justified by a plain procedural bar and jurists of reason would not find the ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

DATED this 23rd day of November, 2011.

_____
Roslyn O. Silver
Chief United States District Judge

---

[8] Both the guilty verdict and the aggravated factor.

- 16 -